UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-154-DLB-CJS

KIMBERLY CHILDRESS                                                    PLAINTIFF

v.                    <u>MEMORANDUM OPINION AND ORDER</u>

BANK OF AMERICA, N.A.                                                 DEFENDANT

* * * * * * * * * * * * * * *

## I.    INTRODUCTION

Plaintiff brings this consumer-protection action under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA), along with related state-law claims, arising out of Defendant's alleged misconduct in servicing Plaintiff's home-mortgage loan, misrepresentation in loan-modification negotiations, and the charging and collecting of improper and excessive fees. The matter is now before the Court on Defendant's Motion to Dismiss. (Doc. # 9). The Motion has been fully briefed, (Docs. # 12 and 15), and is now ripe for the Court's review. For the reasons set forth herein, the Motion is **granted in part** and **denied in part**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff obtained a mortgage in 2008 for the purchase of her home in Villa Hills, Kentucky. (Doc. # 1 ¶¶ 6-7). In 2010, Plaintiff had difficulty making her mortgage payments and reached out to Bank of America ("BOA"), the servicer of her mortgage

loan.[1]  *Id.* ¶¶ 9-12.  In May 2010, BOA sent Plaintiff a letter informing her she was approved for "workout assistance" in the form of a loan modification.  *Id.* ¶ 14.  BOA requested that Plaintiff complete loan-modification documents and return them with a cashier's check.  *Id.* ¶ 16.

On June 3, 2010, Plaintiff claims to have executed and returned the requested documents, with a cashier's check attached.  (Docs. # 1 ¶ 16 and 1-5).  Plaintiff argues that BOA subsequently claimed to have lost the documents, including the check; however, she asserts that this was merely a ruse, evidenced by the fact that BOA cashed the purportedly lost check.  (Doc. # 12 at 1) (citing Doc. # 1 ¶¶ 19-20).  BOA alternatively asserts that Plaintiff returned the "Loan Modification Agreement" (the "2010 modification") unsigned.  (Doc. # 9-1 at 2).  Regardless, it is undisputed that the 2010 modification was never recorded.  Even though BOA asserts that Plaintiff "never executed" the loan-modification agreement, BOA admits that it implemented the terms of the 2010 modification as if she had done so; the modification increased the principal balance of the mortgage loan and lowered the interest rate.  (Doc. # 9-1 at 2) (citing Doc. # 1-5 at 2).

Plaintiff claims that, thereafter, she made "up to date payments" and was current on her account.  (Doc. # 1 ¶¶ 28, 42).  BOA argues, however, that the loan history attached to Plaintiff's Complaint shows that Plaintiff continued to have trouble making payments after the 2010 modification.  (Doc. # 9-1 at 2).  In early 2012, BOA requested that Plaintiff enter into a trial-period plan to prove that she could make payments under

---

[1]  Plaintiff's Complaint states facts that indicate the loan was in default at the time BOA acquired the servicing rights.  (Doc. # 1 ¶¶ 11, 37).  BOA does not appear to dispute these allegations.  *See* (Doc. # 9-1 at 1).  This is significant because it means BOA is a "debt collector" within the scope of the FDCPA.  *See Garner v. Select Portfolio Servicing, Inc.*, No. 17-1303, 2017 WL 8294293, at *3 (6th Cir. Oct. 27, 2017) ("A loan servicer is a 'debt collector' if the loan was in default, or the loan servicer has treated the loan as if it were in default, at the time it acquired the servicing rights to the loan.").

the 2010 modification.  (Docs. # 1 ¶ 44 and 9-1 at 2).  Plaintiff claims that BOA made this request "even though she was maintaining the monthly payments on her [m]ortgage consistently since 2010."  (Doc. # 1 ¶ 44).  BOA claims the plan was offered because Plaintiff had been in default, including missing payments for October, November, and December 2011.  (Doc. # 9-1 at 2) (citing Doc. # 1-17).

In a letter dated February 8, 2013, BOA informed Plaintiff she had completed her trial plan and was approved for a second loan modification.  (Docs. # 1 ¶ 45, 9-1 at 2, and 1-9).  In the same letter, BOA indicated there was an error in the 2010 loan-modification documents and that Plaintiff needed to execute a new agreement.  (Docs. # 1 ¶ 46, 1-9, and 9-1 at 3).  Accordingly, Plaintiff executed a second Loan Modification Agreement (the "2013 modification"), again lowering the interest rate and increasing the principal balance of her mortgage loan.  (Docs. # 1 ¶ 49, 1-10 at 3, and 9-1 at 3).

It appears that Plaintiff also executed—or "re-executed"—the 2010 modification at the same time.  (Docs. # 1-11 and 9-1 at 3).  *See also* (Doc. # 1 ¶¶ 46-53).  BOA admits that the agreement Plaintiff "re-executed" was "not identical" to the loan-modification agreement presented for her signature in 2010; however, BOA asserts that "it reflected the same terms as the 2010 Loan Modification."  (Doc. # 9-1 at 3) (contrasting Doc. # 1-5 with Doc. # 1-11).  Plaintiff tells a different story, alleging that she "was repeatedly told that the documents were lost," was required to fill out packet after packet, and "that the documents she was re-executing were the same documents."[2]  (Doc. # 1 ¶¶ 45-53).  *See also* (Doc. # 12 at 1).  Plaintiff alleges that, over the course of eight years, at the request

---

[2]     Plaintiff argues that BOA never notified her that any modification packets she signed "were deficient in any way."  (Doc. # 12 at 1-2).  Rather, Plaintiff alleges that BOA "merely kept requesting them because they were lost or missing from the Defendant's mess of records."  *Id.* at 2 (citing Doc. # 1 ¶ 50).

of BOA she executed and returned "over ten (10) modification packets."  (Doc. # 1 ¶ 96).

Regardless, it appears that by early 2013, the parties finally resolved—for a time—the

issue of the 2010 modification, and by June 2013, BOA informed Plaintiff that her 2013

modification was complete.  (Docs. # 1 ¶ 53 and 9-1 at 3).

Plaintiff alleges that both packets she executed in 2013 were recorded, resulting

in an erroneous "double modification."  (Docs. # 1 ¶¶ 54, 94 and 12 at 1).  She argues

that "Defendant's misconduct in filing two consecutive modifications in two (2) months

started a wave of assessed fees, costs, interest, 'other deferred amounts,' and 'other

unapplied funds' associated with the Plaintiff's account inappropriately."  (Doc. # 12 at 2)

(citing Doc. # 1 ¶¶ 54, 64-76).  BOA asserts that the 2013 Loan Modification Agreement

(LMA) was properly recorded, and the second modification recorded was merely

"intended to . . . correct the 2010 LMA."  (Doc. # 9-1 at 3 n.4).

In addition to the issue of the loan-modification agreements, the parties dispute the

propriety and amount of fees charged in connection with the modification process.  *See*

(Doc. # 1 ¶ 94) (alleging that BOA improperly and repeatedly assessed late fees in

violation of the mortgage agreement).  In the same February 8, 2013 correspondence

from BOA to Plaintiff discussed *supra*, BOA informed Plaintiff that during the time it took

to process the 2013 modification, Plaintiff did not make all of her mortgage payments in

full, creating a shortage that BOA was forced to pay to the owner of the loan (investors)

called "Other Deferred Amounts."  (Doc. # 9-1 at 3) (citing Doc. # 1-9).  The letter went

on to state that Plaintiff would owe these "Other Deferred Amounts"—consisting of

$7,424.19—at the maturity of the loan agreement.  *Id.*  However, in a September 28, 2013

letter from BOA to Plaintiff, BOA stated that it had made another mistake—this time on

the amount Plaintiff owed under the "Other Deferred Amounts" in the 2013 LMA. (Doc. # 9-1 at 4) (citing Docs. # 1 ¶ 70, 1-9, and 1-14). The letter advised that the "Other Deferred Amounts" actually totaled $3,422.71, not $7,424.19. *Id.*

Plaintiff alleges that BOA improperly applied her July and August mortgage payments to "Other Deferred Amounts," thereby causing the decreased balance (from $7,424.19 to $3,422.71) and resulting in improper calculation of what she owed. (Doc. # 1 ¶¶ 64-70). BOA, on the other hand, insists that Plaintiff is merely confused about the calculation being adjusted because her July and August 2013 payments were late. (Doc. # 9-1 at 4). BOA argues that Plaintiff paid her July 1, 2013 payment on July 16, 2013, and her August 1, 2013 payment on August 23, 2013. *Id.* (citing Doc. # 1-17). BOA asserts that Plaintiff's late July 2013 payment was placed in a suspense account titled "Unapplied Total" and that Plaintiff is confusing this account with the term "Other Deferred Amounts." *Id.* BOA argues that the late July 2013 payment was ultimately applied to principal and interest on August 14, 2013; similarly, BOA argues that the late August 2013 payment was applied to principal, interest, and escrow, but was not placed in the "Unapplied Total" account. *Id.* (citing Docs. # 1-14 and 1-17). BOA further represents that Plaintiff was late on her September, October, and November 2013 mortgage payments as well, and, therefore, on November 15, 2013, BOA sent Plaintiff a notice advising her that it had received her mortgage payment, but the payment was less than needed to bring the loan current—resulting in "overdue payments, fees, and charges." *Id.* at 5 (citing Doc. # 1-16). Plaintiff disputes this account, including BOA's calculations, and alleges that she "continued to pay her mortgage as always" but received correspondence that she missed her July and August 2013 payments and continued to

be charged inappropriate fees. (Doc. # 1 ¶¶ 64-74). Plaintiff alleges—and BOA concedes—that since 2013 Plaintiff has remained current on her mortgage loan payments. (Doc. # 1 ¶ 79). *See also* (Doc. # 9-1 at 5) (citing Doc. # 1-17).

In addition to the assessment of fees and calculation of late charges, the parties also dispute the propriety of communications that took place after the 2013 modification. Due to another mistake by BOA, between December 2014 and December 2015, BOA sent Plaintiff multiple letters. (Doc. # 1 ¶ 80). These letters, referred to in Plaintiff's Complaint, advised that "there was an error in the format" of the 2013 modification and requested that Plaintiff re-execute the LMA. (Doc. # 9-1 at 5) (citing (Doc. # 1-19).

Plaintiff retained counsel in September 2017 and notified BOA she was represented. (Docs. # 1 ¶¶ 82-85). Plaintiff alleges that BOA continued to contact her directly after being notified of her representation, "about foreclosing on her account and otherwise trying to harass her into signing another modification." *Id.* ¶ 86. *See also* (Doc. # 12 at 2) (citing Doc. # 1 ¶¶ 83-84). Plaintiff asserts that Defendant spent "years harassing Plaintiff with threats of foreclosure, despite Plaintiff being current on her mortgage." (Doc. # 12 at 2) (citing Doc. # 1 ¶¶ 75-79). Plaintiff also alleges that BOA "repeatedly denied [Plaintiff] access" to records of her account despite being the "keeper of . . . all records pertaining to the internal treatment of Plaintiff's account." *Id.* (citing Doc. # 1 ¶¶ 83-84).

Plaintiff brought this action on August 29, 2018, alleging violations of the federal FDCPA (Count One), along with six state-law claims: breach of contract (Count Two); negligent misrepresentation (Count Three); fraud (Count Four); constructive fraud (Count Five); breach of the duty of good faith and fair dealing (Count Six); and breach of fiduciary

duty (Count Seven).  (Doc. # 1).  She seeks statutory damages under 15 U.S.C. § 1692k(a)(1) and (a)(2)(a) as well as attorney's fees, costs, and punitive damages; Plaintiff also seeks injunctive relief to "prevent[] Bank of America from employing any of the unlawful conduct, methods, acts, or practices" under the FDCPA.  *Id.* at 21-22.  On October 17, 2018, Defendant BOA filed a Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, which has been briefed and is now ripe for adjudication.  (Docs. # 9, 12 and 15).

## III.  ANALYSIS

### A.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint by providing for dismissal of actions that fail to state a claim upon which relief can be granted.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To be legally sufficient, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As the Supreme Court explained, this means that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to

raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. In deciding whether a plaintiff has set forth a "plausible" claim, a court must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). *See also Garner v. Select Portfolio Servicing, Inc.*, No. 17-1303, 2017 WL 8294293, at *3 (6th Cir. 2017) (citing *Johnson v. Moseley*, 790 F.3d 649, 652 (6th Cir. 2015)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court may consider documents extrinsic to a complaint without converting a motion to dismiss into a motion for summary judgment if the documents a defendant submits in its motion are referred to in the complaint and are central to the plaintiff's claim. *Garner*, 2017 WL 8294293, at *3 (citing *Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 F. App'x 369, 372 (6th Cir. 2012)). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (stating that, in ruling on a 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

## B.     FDCPA Claims

Plaintiff alleges six violations of the FDCPA.  Each will be addressed in turn.

### i.     *Unauthorized Fees*

Plaintiff's Complaint alleges that BOA violated the provision of the FDCPA which prohibits a debt collector from "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  (Doc. # 12 at 4); 15 U.S.C. § 1692f(1).  The Complaint alleges that BOA violated the fifteen-day grace period set forth in the mortgage note, wherein Plaintiff could pay the mortgage payment by the fifteenth day of each month without penalty.  *Id.* (citing Doc. # 1 ¶¶ 116-118).  Plaintiff argues that BOA "has been prematurely penalizing [her] for paying within that grace period . . . [since] 2013."  *Id.* (citing Doc. # 1 ¶¶ 94, 121).  Additionally, Plaintiff points to her allegations that BOA made an "inappropriate double modification of the Plaintiff's mortgage," and she asserts that BOA's own "misconduct" in imposing two modifications at once resulted in the assessment of improper fees.  *Id.* at 4-5 (citing Doc. # 1 ¶¶ 54, 60, 64-80, 94-96).

The Complaint concerns transactions that occurred between 2010 and 2013. Although the Complaint vaguely alleges that some of the late fees "continued" after the 2013 modification, and even construing Plaintiff's allegations in the light most favorable to her as the Court must do at this stage in the proceedings, that allegation is insufficient to put BOA on notice of claims that occurred outside the 2010 to 2013 window of time. As Plaintiff's Complaint was filed on August 29, 2018, that window falls far outside the scope of the FDCPA one-year statute of limitations.  As BOA points out, Plaintiff does not

refute its argument that her FDCPA claims are barred by the statute of limitations. (Doc. # 15 at 2) (citing Doc. # 12). Accordingly, BOA's Motion to Dismiss on this ground is **granted**.

### ii. Communications

Plaintiff next claims that BOA failed to cease direct communications with her after she retained counsel in violation of the FDCPA, which prohibits a "debt collector" from "communicat[ing] with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney[.]" (Doc. # 1 ¶ 102); 15 U.S.C. § 1692c(a)(2). BOA moves to dismiss on this ground, arguing that the Complaint does not make any specific allegation that BOA contacted her after September 29, 2017—the date BOA was notified of Plaintiff's representation—specifically seeking to collect a debt. (Doc. # 9-1 at 8).

In response, Plaintiff points out that—as BOA concedes in its briefing—BOA was notified on September 29, 2017 that Plaintiff was represented by counsel. (Doc. # 12 at 5); *see* (Doc. # 9-1 at 6) (citing Doc. # 1-20). Plaintiff points to the allegations in her Complaint that BOA, after receiving notice of Plaintiff's representation, continued to contact Plaintiff "threatening to foreclose on her account and harassing her into signing another modification." (Doc. # 12 at 5) (citing Doc. # 1 ¶ 86). Further, referring to the documents attached to her Complaint, Plaintiff specifies that BOA sent messages to her on (1) November 21, 2017, (2) November 27, 2017, (3) December 4, 2017, (4) December 21, 2017, and (5) January 4, 2018. (Doc. # 12 at 5-6) (citing Doc. # 1-7). All of these communications occurred within the one-year statute of limitations applicable to Plaintiff's FDCPA claims. Plaintiff alleges that these communications were collection attempts

consisting of "threats to foreclose on Plaintiff's home and further harassment about signing another modification." *Id.* at 6 (citing Doc. # 1 ¶ 86). In reply, BOA advances its own interpretation of its document, arguing that "the notes do not show what was stated" and "the call notes indicate that [BOA] never spoke with [Plaintiff]." (Doc. # 9-1 at 8) (citing Doc. # 1-7).

The Court finds that Plaintiff's Complaint states a plausible claim for relief for the purposes of a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The document setting forth the BOA communications may be considered at this stage because it is referred to in Plaintiff's Complaint, *see* (Doc. # 1 ¶ 73), and the transactions described therein are central to the Complaint. *Garner*, 2017 WL 8294293, at *3. However, the document is not as clear as BOA portrays in its briefing. It does appear that BOA communicated or attempted to communicate with Plaintiff after BOA was notified of her representation, and Plaintiff's Complaint makes specific factual assertions about the content of those communications. Precisely what the document signifies is ambiguous, leaving an issue of fact that is more appropriate for discoery. On a motion to dismiss, the entirety of the complaint and its attachments are to be considered, resolving inferences and ambiguities in a plaintiff's favor. *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014). Accordingly, BOA's Motion to Dismiss on this ground is **denied**.

### iii. *False Representations/Deceptive Means to Collect a Debt*

Plaintiff's third FDCPA claim is that BOA violated 15 U.S.C. § 1692e(10), which generally prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of a debt. (Doc. # 1 ¶ 103). BOA argues that "it is unclear from the general allegations what actions by [Defendant]

were false and deceptive in order to collect a debt" from Plaintiff. (Doc. # 9-1 at 8). This argument lacks merit because Plaintiff's Complaint does not merely recite the language of the statute; rather, Plaintiff makes specific factual assertions regarding the representations she alleges were false.

Plaintiff points to the allegation in her Complaint that BOA management informed her that "any unapplied funds should have been zeroed out during the modification." (Doc. # 12 at 6) (citing Doc. # 1 ¶ 68). It appears that Plaintiff interpreted this to mean that "Defendant made representations to Plaintiff that all assessed fees on her account were to be taken care of by her 2013 modification." *Id*. Because she was thereafter charged "other amounts," as well as interest and accumulating fees, Plaintiff concludes that "[s]uch representations were false." *Id.* (citing Doc. # 1 ¶ 72). Further, Plaintiff asserts that "Defendant admitted that it had made a mistake with applying fees onto Plaintiff's account, but continued to send foreclosure notices to her informing her that her account was in default." *Id.* (citing Docs. # 1 ¶¶ 68-76 and 1-19).

Plaintiff makes specific factual assertions regarding the representations she alleges were false, resulting in a plausible claim for relief. However, as Plaintiff appears to concede, any representations made more than one year prior to the filing of Plaintiff's Complaint—including any representations in 2013—are barred on statute-of-limitations grounds. 15 U.S.C. § 1692k(d). Although the Complaint vaguely alleges that some of BOA's violative conduct "continued," even construing Plaintiff's allegations in the light most favorable to her, that allegation did not put BOA on notice of claims that occurred outside of the 2010 to 2013 window. As Plaintiff's Complaint was filed on August 29, 2018, allegations of misconduct between 2010 and 2013 are far outside the scope of the

one-year statute of limitations.  Again, Plaintiff does not refute BOA's argument that her FDCPA claims are barred by the statute of limitations.  (Doc. # 15 at 2) (citing Doc. # 12).  Accordingly, BOA's Motion to Dismiss Plaintiff's FDCPA claim under 15 U.S.C. § 1692e(10) is **granted**.

### iv.    *False Representations Regarding the Status of a Debt*

Plaintiff's fourth FDCPA claim is that BOA violated 15 U.S.C. § 1692e(2) by using false representations regarding the legal status of a debt.  (Doc. # 1 ¶ 104).  Again, BOA argues that the Complaint is unclear "what the false representations were and why they were false."  (Doc. # 9-1 at 8).  Further, BOA argues that, "[a]lthough unclear, if [Plaintiff] is referring to any alleged misrepresentations in the November 2013 statement or August 2013 letter, those claims are barred by the one-year statute of limitations."  *Id.* (citing 15 U.S.C. § 1692k(d)).

In response, Plaintiff again points to the allegation in her Complaint that BOA management informed her that "any unapplied funds should have been zeroed out during the modification," which she interpreted to mean "that all assessed fees on her account were to be taken care of by the 2013 modification."  (Doc. # 12 at 6-7) (citing Doc. # 1 ¶ 68).  Because she was thereafter charged "other amounts," as well as interest and accumulating fees, Plaintiff concludes that "[s]uch representations were false."  (Doc. # 12 at 7) (citing Doc. # 1 ¶ 72).   Additionally, Plaintiff points to her allegation that BOA "continued to pursue foreclosure notices to her and inform[ed] her that her account was in default" all while Plaintiff remained current on her mortgage payments; Plaintiff argues that "[s]uch default notices and foreclosure notices, in light of Plaintiff's monthly payments

on her mortgage, were false on their face and misrepresented the character, amount, and legal status of the debt." *Id.* (citing Docs. # 1 ¶¶ 68-79 and 1-19).

Plaintiff's Response fails to address the statute-of-limitations issue raised by BOA on this count. Again, Plaintiff makes specific factual assertions regarding the representations she alleges were false, resulting in a plausible claim for relief. However, due to the one-year statute of limitations, representations made more than one year prior to the filing of the Complaint are barred. 15 U.S.C. § 1692k(d). Even construing Plaintiff's allegation that some of BOA's violative conduct "continued" in the light most favorable to her, the allegation does not put BOA on notice of claims that occurred before or after the 2010 to 2013 time frame. As Plaintiff's Complaint was filed on August 29, 2018, allegations between 2010 and 2013 are far outside the scope of the one-year statute of limitations. Additionally, Plaintiff does not appear to refute BOA's argument that her FDCPA claims are barred by the statute of limitations. (Doc. # 15 at 2) (citing Doc. # 12). Accordingly, BOA's Motion to Dismiss Plaintiff's FDCPA claim under 15 U.S.C. § 1692e(2) is **granted**.

### v. *Harassing Conduct*

Plaintiff's fifth FDCPA claim is that BOA engaged in conduct meant to harass in violation of 15 U.S.C. § 1692d(5). (Doc. # 1 ¶ 110). This provision prohibits a "debt collector" from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" which includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Plaintiff's Complaint alleges that "[d]espite Plaintiff

disputing the fees, interest, and amounts assessed to her account as a result of the Defendant's improper modifications, and Defendant admitting that it made mistakes regarding her account and the fees assessed, Defendant continued to harass Plaintiff by showing up to her home, sending her repeated notices of delinquency, and calling her home repeatedly."  (Doc. # 12 at 7) (citing Doc. # 1 ¶¶ 68, 70-74, 79).  Further, Plaintiff argues that BOA "continued to collect on a debt it caused" despite having "knowledge that mistakes had been made and that any delinquency based on fees or 'other' amounts were a result of its own misconduct."  *Id.*

BOA argues that dismissal is proper because "it is unclear what conduct [Plaintiff] claims was harassing, how [BOA] pursued a disputed debt, why the debt was disputed, or what details [BOA] misrepresented about the loan."  (Doc. # 9-1 at 9).  Even construing Plaintiff's allegations in the light most favorable to her, these allegations in the Complaint essentially trace the statutory language rather than asserting factual allegations and are simply too generic to adequately put BOA on notice.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Accordingly, BOA's Motion to Dismiss Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692d(5) is **granted.**

### vi.   *Failure to Communicate Dispute of Debt*

Plaintiff's sixth and final FDCPA claim is that BOA failed to communicate her dispute of the debt in violation of 15 U.S.C. § 1692e(8).  (Doc. # 1 ¶ 111).  BOA argues that "[t]his count should be dismissed because [Plaintiff] fails to allege that she disputed the debt, why she disputed the debt," or that she notified BOA of her dispute of the debt. (Doc. # 9-1 at 9).  In response, Plaintiff argues that she "repeatedly disputed the fees assessed her, the other deferred amounts, and any interest incurred from such."  (Doc. #

12 at 8) (citing Doc. # 1 ¶¶ 65-68).  Even construing Plaintiff's allegations in the light most favorable to her, the Complaint essentially traces the statutory language rather than asserting factual allegations and is simply too threadbare to adequately put BOA on notice.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Accordingly, BOA's Motion to Dismiss Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692e(8) is **granted.**

### C.    State-Law Claims

BOA moves to dismiss Plaintiff's five state-law claims as well as Plaintiff's request for punitive damages.  Each will be addressed in turn.

#### i.    *Breach of contract*

BOA asserts that dismissal of Plaintiff's breach-of-contract claim is proper because the allegations in her Complaint are directly refuted by the exhibits Plaintiff attached to her Complaint.  (Doc. # 9-1 at 9).  BOA's argument characterizes the breach-of-contract claim as being four-fold: (1) assessment of late fees; (2) application of payments; (3) failure to record the loan modification; and (4) charging "other deferred amounts."  *See id.*  Each will be discussed below.

#### a.    Assessment of Late Fees

First, Plaintiff asserts that the Mortgage Note affords a 15-day grace period to make a monthly payment without penalty, and that BOA breached this term by assessing late fees when Plaintiff would make a payment during this grace period.  (Doc. # 1 ¶¶ 92, 94, 117-121).  BOA argues that the Complaint is deficient because it does not put BOA on notice of which late fees were improper; further, BOA argues that the loan history attached to the Complaint shows that late fees were assessed in July, August, September, October, and November 2013 because payments were made *after* the grace

period had elapsed.  (Doc. # 9-1 at 10) (citing Doc. # 1-17).  BOA argues that "[a] cursory review of the Plaintiff's exhibits show Plaintiff routinely made her mortgage payments after the contractual grace period."  (Doc. # 15 at 3).  "The loan history attached to the Complaint demonstrates that each time [Defendant] assessed a late fee, [Plaintiff] did not make a payment by the 15th of the month."  *Id.* at 3-4 (citing Doc. # 1-17).

In response, Plaintiff argues that prior to engaging in any discovery, "it is impossible to say how many times" she was charged a late fee during the grace period because "[d]espite Plaintiff's best efforts, Plaintiff has only been able to recover certain documents from Defendant pertaining to her account."  (Doc. # 12 at 9) (citing Docs. # 1 ¶¶ 83-84 and 1-20).  However, Plaintiff asserts that "in November of 2013, Plaintiff received her statement, wherein she was improperly assessed additional fees for overdue amounts that were not outstanding as all her payments were current."  *Id.* (citing Doc. # 1 ¶ 72).  Further, Plaintiff argues that the documents attached to her Complaint show "that she at times made two (2) payments in a month to pay a month in advance, yet she was still charged a late fee for doing so."  *Id.* (citing Doc. # 1-17).  BOA points out that Plaintiff's Response again vaguely alleges that BOA has been improperly assessing late fees since 2013, but again fails to specifically allege which late fees were improperly assessed.  (Doc. # 15 at 2).

Plaintiff attached to her Complaint a statement of payments from BOA.  (Doc. # 1-17).  The document appears to show that Plaintiff made her July 1, 2013 mortgage payment on July 16, 2013; her August 1, 2013 payment on August 23, 2013; her September 1, 2013 payment on September 27, 2013; her October 1, 2013 payment on November 15, 2013; and her November 1, 2013 payment on November 19, 2013.  *Id.* at

16-17.  However, this document contains a number of ambiguities, and the Court finds that it is not as clear as BOA's Motion makes it out to be.  On a motion to dismiss, the entirety of the complaint and its attachments are to be considered, resolving inferences and ambiguities in a plaintiff's favor.  *Rembisz*, 590 F. App'x at 504.  The document refers vaguely to "MISC PAYMENTS" without providing context or an explanation; it leaves an ambiguity as to exactly which payments were made when, and how payments were applied.  (Doc. # 1-17 at 16-17).  Moreover, the document shows that a late fee was charged but later waived.  *Id.*  Construing the factual allegations in Plaintiff's Complaint in the light most favorable to her, accepting her allegations as true, and drawing all reasonable inferences in her favor, the Court finds that she has stated a *plausible* claim for relief on this ground—despite the document cited by BOA.  *See Johnson*, 790 F.3d at 652.  BOA is in possession of this information; in light of the circumstances, Plaintiff is entitled to discovery on this matter.  The Court is satisfied that Plaintiff meets the minimum standard outlined by the U.S. Supreme Court in *Twombly* and *Iqbal*.  Accordingly, BOA's Motion to Dismiss Plaintiff's breach-of-contract claim on this ground is **denied**.

### b.  Application of Payments

BOA next turns to Plaintiff's allegation that BOA failed to accurately apply payments because it applied her monthly payment to "unapplied funds" that were improperly charged to her rather than applying the payment to the principal and interest.  *See* (Doc. # 1 ¶¶ 122-125).  Plaintiff claims that her payments that were put in the "Unapplied Total" suspense account were misapplied because the Mortgage Note dictates that payment should be applied in descending order from mortgage-insurance premium, taxes, interest, amortization of principal, and finally to late charges.  (Doc. # 12

at 10) (citing Doc. # 1 ¶ 122).  BOA argues that the statement of payments attached to Plaintiff's Complaint demonstrates that the payments were not misapplied.  (Doc. # 9-1 at 11).  Plaintiff argues that the "limited statements Plaintiff was able to gather" from BOA "show a clear discrepancy in which month the Defendant was applying Plaintiff's payments" and, particularly, shows that Plaintiff's June 2013 payment was credited toward "unknown unapplied funds."  (Doc. # 12 at 10) (citing Doc. # 1-17).

At this stage in the proceedings—particularly when Plaintiff has not had any opportunity for discovery and most of the information at issue is in BOA's hands— ambiguities must be resolved in Plaintiff's favor.  *Rembisz*, 590 F. App'x at 504.  Again, as set forth *supra*, the Court finds that the document cited by BOA is not as clear as BOA's Motion portrays it to be—terminology such as "MISC PAYMENTS" is undefined and it is ambiguous from the Court's review exactly which payments were made, and when and how payments were applied.  Even under BOA's own explanation of the statement, Plaintiff made a payment on July 16, 2013 which was applied to an "Unapplied Total" account for nearly a month; payment was not applied to the principal, interest, and escrow until August 14, 2013.  *See* (Doc. 9-1 at 11) (citing Doc. # 1-17 at 16).  Construing the factual allegations in Plaintiff's Complaint in the light most favorable to her, accepting her allegations as true, and drawing all reasonable inferences in her favor, the Court finds that she has stated a *plausible* claim for relief—despite the document cited by BOA.  *See Johnson*, 790 F.3d at 652.  BOA has all of the relevant information; in light of the circumstances, Plaintiff must be permitted to proceed to discovery on this matter.  The Court finds that Plaintiff meets the minimum plausibility standard set forth in *Twombly* and

*Iqbal*.  Accordingly, BOA's Motion to Dismiss Plaintiff's breach-of-contract claim on this ground is **denied**.

### c.      Failure to Record the 2010 Modification.

BOA next turns to Plaintiff's allegation that BOA breached the 2010 modification by failing to record it.  (Doc. # 1 ¶ 129).  In response, BOA argues that there is no provision in the agreement requiring it to record the modification; nonetheless, even if there were, BOA still modified the loan.  (Doc. # 9-1 at 11).  Additionally, BOA argues that it was unable to record the 2010 modification because Plaintiff "never executed it" and BOA had to correct this issue in 2013 by having Plaintiff re-execute the 2010 LMA so that it could be recorded.  *Id.* at 12.  Plaintiff tells a much different story, alleging that BOA lost the modification packet again and again, requiring her to submit "re-executed" packets repeatedly.  (Doc. # 12 at 11) (citing Doc. # 1 ¶¶ 16, 21, 30-33).  Plaintiff asserts that Defendant's duty to "effectuate" the loan documents is "implicit in the execution of the loan modification," and "Defendant's failure to record such modification is evidence of its improper treatment of Plaintiff's loan modification."  *Id.* at 12.

BOA's argument fails to show that dismissal is proper; it appears that, rather than demonstrating how Plaintiff has failed to state a claim, BOA has simply shown that the facts are in dispute.  Discovery, not dismissal, is the appropriate solution.  Accordingly, BOA's Motion to Dismiss Plaintiff's breach-of-contract claim as to this issue is **denied**.

### d.      Charging "Other Deferred Amounts"

Lastly, Plaintiff alleges that BOA breached the 2013 modification because it charged Plaintiff $7,439.19.  (Doc. # 1 ¶ 133).  In its Motion to Dismiss, BOA points to correspondence Plaintiff attached to her Complaint, wherein BOA informed Plaintiff that:

> During the additional time that we needed to process your loan modification, you did not make all of your mortgage payments in full. This created a shortage that we paid to the owner of your loan (also known as the investor). The shortages between what you should have paid compared to what you actually paid after July 1, 2012, including any payment(s) you missed totals $7,424.19. This amount is called "Other Deferred Amounts" in your Modification Agreement, and does not accrue interest. You must pay this amount in full when your mortgage term ends, when you refinance your loan, or when you sell your home. This amount is not related to any principal that was deferred as part of your modification in order to create a more affordable mortgage payment.

(Doc. # 9-1 at 12) (quoting Doc. # 1-9 at 1). BOA argues that, because Plaintiff executed the 2013 LMA with knowledge of this deferred amount, Plaintiff agreed to this arrangement and therefore BOA did not breach any contractual provision. (Docs. # 9-1 at 12 and 15 at 4).

In response, Plaintiff argues that "[o]n one of her many conversations about one of the many modification packets, Plaintiff was instructed that by sending just one (1) more modification packet, she would complete her modification and that all fees were to be taken care of as part of the modification." (Doc. # 12 at 12) (citing Doc. # 1 ¶¶ 60-68). Additionally, Plaintiff argues that her July and August 2013 payments were "applied to certain other deferred amounts" without her knowledge. *Id.* (citing Doc. # 1 ¶ 64). Plaintiff alleges that "such missed payments were an impossibility, as Plaintiff's payments were automatically coming out of her checking account." *Id.* (citing Doc. # 1 ¶ 65).

BOA responds that the documents attached to the Complaint show that the "Other Deferred Amounts" cannot have been charged *because of* Plaintiff missing her July and August 2013 payments; in support of this statement, BOA points out that "Plaintiff agreed to 'Other Deferred Amounts' of $7,242.19 as part of her 2013 Loan Modification executed on February 26, 2013" which was approximately five months prior. (Doc. # 15 at 5).

The parties appear to be talking past one another here. Plaintiff does not appear to be arguing that the $7,439.19 was charged due to her missing her July and August 2013 payments. She actually alleges that she paid both of those. What Plaintiff does appear to be arguing is that BOA agreed with her that by entering into the 2013 modification, the $7,439.19 charge would be *wiped out*. Thus, Plaintiff argues, the July and August 2013 payments she made were not applied to interest, principal, etc. as was supposed to happen, but rather were improperly applied toward the $7,439.19 charge. In any event, BOA's argument that "[t]he 'Other Deferred Amounts' is unrelated to any payment issues in July and August of 2013" is—again—not easily confirmed by the statement. *See* (Doc. # 15 at 5). Nor is BOA's other argument helpful, that "the reduction of the 'Other Deferred Amounts' from $7,242.19 to $3,422.71 was explained to Plaintiff as a miscalculation in her 2013 Loan Modification"; the documents attached to Plaintiff's Complaint do not bear this out. More discovery could bear this out; however, for now Plaintiff has stated a plausible claim. Accordingly, BOA's Motion to Dismiss Plaintiff's breach-of-contract claim on this ground is **denied**.

### ii.    *Negligent Misrepresentation*

Defendant BOA next moves to dismiss Plaintiff's negligent-misrepresentation claim that BOA supplied false information to her regarding the 2010 and 2013 loan modifications pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. # 9-1 at 12) (citing Doc. # 1 ¶¶ 138-144). BOA asserts that Plaintiff failed to "state with particularity the circumstances constituting fraud or mistake." *Id.* at 13; Fed. R. Civ. P. 9(b). Specifically, BOA argues that Plaintiff failed to identify what false information it provided to Plaintiff, and how she relied on such false representations. (Doc. # 9-1 at 13).

Instead, Plaintiff's Complaint generally states that BOA "misrepresented facts over and over again." (Doc. # 1 ¶ 142). Additionally, BOA argues that Plaintiff failed to allege how she was damaged because the 2010 and 2013 Loan Modifications were implemented as demonstrated by the loan history. (Doc. # 9-1 at 14). Furthermore, BOA argues that any claim related to a misrepresentation prior to August 29, 2013 would be barred by the five-year statute of limitation for negligent misrepresentation. *Wagner v. Drees Co.*, 422 S.W.3d 281, 282 n.1 (Ky. Ct. App. 2013).

In response, Plaintiff argues that BOA "failed to exercise reasonable care in providing Plaintiff with an answer to her mortgage payment questions." (Doc. # 12 at 14). BOA sent communications that were confusing and appeared to conflict; the confusion was compounded by multiple mistakes, including mistakes in the modification documents and in the calculation of the $ 7,439.19 she apparently owed. (Doc. # 12 at 13-14) (citing Doc. # 1 ¶¶ 64-68). BOA was unclear in communicating what was being applied, where, and why—evidenced by an inscrutable statement attached to Plaintiff's Complaint. Plaintiff argues that she "was informed that Defendant had made a mistake and that these 'other' amounts that her payments were being applied to should have been zeroed out with her modification that had been processed, thereby admitting the incorrect application of Plaintiff's previous payments." *Id.* (citing Doc. # 1 ¶ 68). Then on September 28, 2013, she received a letter "stating that the total of 'other' amounts was reduced, yet Plaintiff was previously informed that these amounts were mistakenly assessed to her." *Id.* at 14 (citing Doc. # 1 ¶¶ 68-70). Plaintiff asserts that she tried to call Defendant to ascertain why the fees remained on her account and "was given misinformation so that her account

would continue to incur additional fees and costs and Defendant would make additional money off Plaintiff." *Id.* (citing Doc. # 1 ¶¶ 68, 72, 75-77).

BOA argues that "vague recollections of calls with unnamed [BOA] personnel" still fail to specify "why the statements were false." (Doc. # 15 at 5). BOA argues that the September 28, 2013 letter "addressed the issue, corrected the Other Deferred Amount and detailed the previously agreed to terms of the modification . . . [and] [t]he payment history attached to the Complaint reflect the corrective actions taken" by Defendant. *Id.* BOA also points out that Plaintiff failed to dispute that "the statute of limitations serves as a bar" to this claim. *Id.* at 6.

Kentucky has adopted the Restatement (Second) of Torts § 552, which defines an actionable act of negligent misrepresentation as "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions" which causes "pecuniary loss to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004).

Plaintiff's Complaint alleges that in September 2013 she tried to call Defendant to ascertain why the fees remained on her account and "was given misinformation so that her account would continue to incur additional fees and costs and Defendant would make additional money off Plaintiff." (Doc. # 12 at 14) (citing Doc. # 1 ¶ 68, 72, 75-77). This allegation is sufficient. *See Presnell*, 134 S.W.3d at 580. This is alleged to have occurred less than five years before Plaintiff filed her Complaint, so it is not barred by the applicable

statue of limitations. "It may develop during discovery or trial that [Plaintiff] cannot prove the elements of the independent tort of negligent misrepresentation, but at this time, [Plaintiff's] [C]omplaint sufficiently states a claim against [BOA] for negligent misrepresentation." *Id.* Accordingly, BOA's Motion to Dismiss as to Plaintiff's negligent misrepresentation claim is **denied**.

### iii.    Fraud

Just like the claim for negligent misrepresentation, BOA moves to dismiss Plaintiff's fraud claim pursuant to Rule 9(b) because the fraud allegations in Plaintiff's Complaint are too general and fail to specify the contents of the alleged misrepresentation or the time and place of the fraud.  (Doc. # 9-1 at 14-15).  Further, BOA argues that documents attached to Plaintiff's Complaint show that even if the 2010 modification was not recorded, BOA still implemented the modification as if it had been.  *Id.* at 15.  Lastly, BOA argues that Plaintiff's fraud claim fails because it is barred by the five-year statute of limitations and the alleged fraud occurred in 2010.  *Id.* (citing Ky. Rev. Stat. § 413.120(12); *Dodd v. Dyke Indus.*, 518 F. Supp. 2d 970, 972 (W.D. Ky. 2007)).

In response, Plaintiff points to the allegations in her Complaint that when she called BOA to complain about an August 2013 delinquency notice, a manager informed Plaintiff "that Defendant did not process her monthly payments for the previous several months towards her interest and principal."  (Doc. # 12 at 15) (citing Doc. # 1 ¶ 66).  Further, Plaintiff alleges that through additional conversations with various BOA managers, she was informed that Defendant had made a mistake and that these "other" amounts that her payments were being applied to should have been zeroed out with her modification, thereby admitting the incorrect application of Plaintiff's previous payments.  *Id.* at 16

(citing Doc. # 1 ¶¶ 68-70, 72, 75-77).  Plaintiff alleges that these representations were made by Defendant's managers in August, September, and October of 2013.  *See id.* Plaintiff asserts that BOA "had knowledge of these fraudulent statements and continued to give her misinformation so that her account would continue to incur additional fees and costs and Defendant would make additional money off Plaintiff." *Id.* (citing Doc. # 1 ¶ 72). Additionally, Plaintiff asserts that BOA continued to send Plaintiff fraudulent delinquency notices despite the fact that she was current on her mortgage payments in order to induce her to execute another modification and incur additional fees.  *Id.*

Under Kentucky law, a fraud claim consists of six elements: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that the plaintiff thereby suffered injury.  *In re Sallee*, 286 F.3d 878, 895 (6th Cir. 2002) (citing *McGuffin v. Smith*, 286 S.W. 884, 886 (Ky. 1926)).

Here, "there has been no discovery in this action, and the alleged fraud occurred over an extended period of time, is within the knowledge and control of [Defendant], and consisted of numerous acts; consequently, the specificity requirements of Rule 9(b) will be applied less stringently."  *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (citing *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509-10 (6th Cir. 2007)).  Reviewing Plaintiff's Complaint, the Court is convinced that the Complaint is sufficiently detailed to state a plausible claim that puts BOA on notice.  Plaintiff's Complaint "contains sufficient facts to support her claims of fraud; the process of

discovery will provide her an opportunity to obtain further evidence in support of these facts, much of which may be in [BOA's] possession and/or control." *Whalen*, 783 F. Supp. 2d at 982.

Further, BOA's statute-of-limitations argument is unavailing. "The limitations period on fraud actions is five years from the date the fraud could have been discovered 'in the exercise of ordinary diligence.'" *Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 711 (W.D. Ky. 2010) (citing Ky. Rev. Stat. §§ 413.120, 413.130(3)). Plaintiff alleges that the fraudulent conduct occurred in August, September, and October of 2013 and continued from there. (Doc. # 12 at 16) (citing Doc. # 1 ¶¶ 68-77). Plaintiff's Complaint was filed approximately five years later, on August 29, 2018. BOA has failed to demonstrate that dismissal is appropriate at this stage of the proceedings. Accordingly, BOA's Motion to Dismiss as to Plaintiff's fraud claim is **denied**.

### iv. Constructive Fraud

BOA next moves to dismiss Plaintiff's claim for constructive fraud, arguing that its servicing of Plaintiff's mortgage did not create a relationship of trust giving rise to a fiduciary duty on the part of BOA. (Doc. # 9-1 at 16) (citing Doc. # 1 ¶¶ 165-66; *Mills v. Flagstar Bank*, No. 6:17-CV-294, 2018 U.S. Dist. LEXIS 30021, at *13 (E.D. Ky. Feb. 26, 2018)). In response, Plaintiff argues that Kentucky has recognized that a mortgagee-mortgagor relationship—though not *typically*—nevertheless *can* be indicative of a fiduciary relationship. (Doc. # 12 at 17) (citing *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 485 (Ky. 1991)); *In re Sallee*, 286 F.3d at 892-93. Plaintiff concludes that the parties' relationship comes down to an issue of fact not proper for a motion to dismiss. (Doc. # 12 at 17). In reply, BOA reiterates its argument that Plaintiff failed to demonstrate

that the case at hand presents the requisite "special circumstance" giving rise to a fiduciary relationship. (Doc. # 15 at 7) (citing *Morgan v. HSBC Mortg. Servs.*, 930 F. Supp. 2d 833, 839 (E.D. Ky. 2013)).

Constructive fraud arises generally "from the breach of a legal duty which the law would pronounce fraudulent because of its tendency to deceive others, violate confidence, or injure public interest." *Kendrick v. Bailey Vault Co., Inc.*, 944 S.W.2d 147, 150 (Ky. Ct. App. 1997) (emphasis added) (citing *Wood v. Kirby*, 566, S.W.2d 751 (Ky. 1978)). "This doctrine looks to a breach of a legal equitable duty, where the parties' conduct tends to deceive others[.]" *Harris v. Harris*, No. 2017-CA-32, 2019 WL 2563402, at *7 (Ky. Ct. App. June 21, 2019) (citing *Combs v. Poulos*, 44 S.W.2d 571, 573 (Ky. 1931)). "The doctrine of constructive fraud has not been very favorably received" and generally fails absent a showing of a fiduciary relationship. *Register v. Nature Conservancy*, No. 5:13-CV-77, 2014 WL 6909042, at *11 (E.D. Ky. Dec. 9, 2014) (quoting *Blackburn v. Smith*, 33 S.W.2d 336, 337 (Ky. 1930)).

"A fiduciary duty requires more than the generalized business obligation of good faith and fair dealing." *In re Sallee*, 286 F.3d at 891. As BOA points out, practically speaking, Kentucky courts have found the requisite fiduciary relationship between bank and borrower only in the unique circumstance where a bank "profited from confidential information received through the borrower." (Doc. # 15 at 8) (citing *Snow Pallet*, 367 S.W.3d at 1, 4). There are no such allegations here. Plaintiff's Complaint is wholly devoid of any factual allegations that would show the relationship here between herself and BOA rose above the traditional bank-and-borrower relationship; nor does Plaintiff point to any

relevant authority to support her claim. Accordingly, BOA's Motion to Dismiss as to Plaintiff's constructive-fraud claim is **granted**.

### v.    *Breach of Good Faith and Fair Dealing*

BOA next moves to dismiss Plaintiff's claim for breach of good faith and fair dealing. (Doc. # 9-1 at 17) (citing Doc. # 1 ¶¶ 172-73). BOA argues that the exhibits attached to Plaintiff's Complaint show that BOA implemented the 2010 modification and the 2013 modification as agreed; further, BOA argues that Plaintiff's Complaint fails to specify how BOA supposedly harassed her. *Id.* (citing Doc. # 1-17). Lastly, BOA argues that "Kentucky law does not recognize the implied covenant of good faith as creating a standalone cause of action." *Id.* at 18 (citing *J.S. v. Berla*, 456 S.W.3d 19, 25-26 (Ky. Ct. App. 2015)).

In response, Plaintiff argues that all contracts impose on the parties an implied covenant of good faith and fair dealing and breach of this covenant "can be the basis of a viable breach of contract claim." (Doc. # 12 at 18) (citing *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189 (6th Cir. 2015)). Plaintiff asserts that BOA breached the contract "when it applied Plaintiff's monthly payment to her account" rather than applying payment towards the mortgage insurance, taxes, interest, and amortization of the principal first—resulting in Plaintiff incurring fees. It appears that Plaintiff argues Defendant breached the implied duty of good faith and fair dealing by admitting "that it had made a mistake" but then doing "nothing to remedy this mistake, and instead has harassed Plaintiff, threatened to foreclose on her home, and assess her continued fees." (Doc. # 12 at 18) (citing Doc. # 1 ¶¶ 72, 79). It appears that Plaintiff alleges BOA also breached this duty in 2010 when it "cashed her check [but] refused to acknowledge receipt

of the modification paperwork that was **attached** to the check." *Id.* (citing Doc. # 1 ¶¶ 12-25).

Plaintiff is correct that breach of the implied covenant of good faith and fair dealing that applies to all contracts "can be the basis of a viable breach of contract claim." *Hargis*, 785 F.3d at 196. However, the *Hargis* court went on to qualify this principle, stating that "an independent tort claim for breach of that duty is only permitted where there is a special relationship between the parties and where distinct elements are present." *Id.* The *Hargis* court described such "distinct elements" as "unequal bargaining power, vulnerability, and trust among the parties; nonprofit motivations for contracting (e.g., peace of mind, security); and inadequacy of standard contract damages." *Id.* (citations omitted). Here, there are no factual allegations in Plaintiff's Complaint to show such "distinct elements" that would give rise to the requisite "special relationship" under Kentucky law; nor does Plaintiff point to any relevant authority to support her claim. Accordingly, BOA's Motion to Dismiss as to Plaintiff's good-faith-and-fair-dealing claim is **granted**.

### vi. Breach of Fiduciary Duty

Next, BOA moves to dismiss Plaintiff's claim for breach of fiduciary duty which alleges BOA failed to disclose certain material facts as to the 2010 modification for recording the "subsequent double modification." (Doc. # 9-1 at 18) (citing Doc. # 1 ¶ 176-77). BOA argues that servicing Plaintiff's mortgage loan and entering into the loan-modification agreements with Plaintiff did not give rise to a fiduciary duty. *Id.* at 18-19 (citing *Mills*, 2018 U.S. Dist. LEXIS 30021, at *13). BOA further argues that Plaintiff's Complaint fails to allege which "certain material facts" BOA failed to disclose. *Id.* at 19 (citing Doc. # 1 ¶ 177; *Morgan v. HSBC Mortg. Servs.*, 930 F. Supp. 2d 833, 839 (E.D.

Ky. 2013)).  Lastly, BOA argues that the Complaint fails to allege how any "double modification" resulted in damages to Plaintiff.  *Id.* at 20.

In response, Plaintiff argues that, while banks generally do not owe a fiduciary duty to their customers, "a bank may owe a fiduciary duty to its customer to disclose material facts affecting a loan transaction of the customer's."  (Doc. # 12 at 19) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1 (Ky. Ct. App. 2012); *Steelvest, Inc.*, 807 S.W.2d at 485).  Plaintiff reiterates her allegations and argues that "the analysis of such claims comes down to a factual analysis as to the relationship between the parties, thereby creating a factual issue . . . not suited to be determined by the Court on a Motion to Dismiss."  (Doc. # 12 at 19).  As set forth *supra*, however, Plaintiff has simply failed to make factual allegations that would give rise to the requisite fiduciary relationship under Kentucky law.  Accordingly, BOA's Motion to Dismiss as to Plaintiff's breach-of-fiduciary-duty claim is **granted**.

### vii.    *Punitive Damages*

Finally, BOA moves to dismiss Plaintiff's request for punitive damages because the Complaint fails to allege that BOA acted with the requisite scienter.  (Doc. # 9-1 at 20) (citing the requirement of Ky. Rev. Stat. § 411.184(2) that a plaintiff show by clear and convincing evidence that a defendant "acted toward the plaintiff with oppression, fraud or malice").  Further, BOA argues that Kentucky law prohibits recovery of punitive damages in breach-of-contract cases.  (Doc. # 9-1 at 20) (citing Ky. Rev. Stat. § 411.184(4)).  In response, Plaintiff argues that her fraud claim satisfies this scienter requirement at the motion-to-dismiss stage.  (Doc. # 12 at 20) (citing *Timmons v. Wal-Mart Stores, Inc.*, 33 F. Supp. 2d 577, 578 (W.D. Ky. 1999)).

Under Kentucky law, "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." Ky. Rev. Stat. § 411.184(2). However, "[i]n no case shall punitive damages be awarded for breach of contract." *Id.* § 411.184(4). Here, Plaintiff alleges more than merely a breach-of-contract claim. As discussed *supra*, Plaintiff has also made an FDCPA claim as well as state-law claims, including fraud. Moreover, Plaintiff's allegations indicate that BOA acted fraudulently. The Complaint alleges that "[t]hroughout her entire interaction with Defendant, [Plaintiff] was given false information that [BOA] either knew to be false, knew there was a[] substantial likelihood that it was false, or recklessly did not care that the information that Defendant was giving [Plaintiff] was false." (Doc. # 1 ¶ 51). Further, the Complaint alleges that "[e]ither [BOA] recklessly maintained [Plaintiff's] records such that it did not know what is going on with [Plaintiff's] account or [BOA] has been working to actively deceive [Plaintiff] so that she remains unaware that they fraudulently recorded two modifications of [Plaintiff's] mortgage." *Id.* ¶ 78. Plaintiff asserts that BOA acted intentionally when making these false representations to her. *Id.* ¶¶ 151-57, 183. Taking all the allegations in the light most favorable to Plaintiff, as it must do at this stage of the proceedings, the Court finds that Plaintiff has alleged facts that could give rise to an inference that BOA's actions rise to the requisite level of "oppression, fraud or malice" within the scope of § 411.184. Therefore BOA's Motion to Dismiss as to Plaintiff's claim for relief in the form of punitive damages is **denied**.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, **IT IS ORDERED** as follows:

(1)     Defendant BOA's Motion to Dismiss (Doc. # 9) is **GRANTED IN PART** and **DENIED IN PART**; specifically,

(a)     Five of Plaintiff's claims under the FDCPA (Count 1) are **DISMISSED**;

i.      Plaintiff's claim for unauthorized fees under the FDCPA (15 U.S.C. § 1692f(1)) is **DISMISSED**;

ii.     Plaintiff's claim for false representation in connection with debt collection under the FDCPA (15 U.S.C. § 1692e(10)) is **DISMISSED**;

iii.    Plaintiff's claim for false representation regarding status of debt under the FDCPA (15 U.S.C. § 1692e(2)) is **DISMISSED**;

iv.     Plaintiff's claim for harassing conduct under the FDCPA (15 U.S.C. § 1692d(5)) is **DISMISSED**;

v.      Plaintiff's claim for failure to communicate dispute of debt under the FDCPA (15 U.S.C. § 1692e(8)) is **DISMISSED**;

(b)     Plaintiff's claim under the FDCPA (Count 1) for failure to cease communications after retaining counsel (15 U.S.C. § 1692c(a)(2)) will **proceed to discovery**;

(b)     Plaintiff's breach-of-contract claim (Count 2) will **proceed to discovery**;

(c)     Plaintiff's negligent-misrepresentation claim (Count 3) will **proceed to discovery**;

(d)     Plaintiff's fraud claim (Count 4) will **proceed to discovery**;

(e)     Plaintiff's constructive-fraud claim (Count 5) is **DISMISSED**;

(f)     Plaintiff's breach-of-good-faith-and-fair-dealing claim (Count 6) is **DISMISSED**;

(g)     Plaintiff's breach-of-fiduciary-duty claim (Count 7) is **DISMISSED**; and

(h)     Plaintiff's request for punitive damages (Count 8) will **proceed to discovery**;

(2)     **Within twenty-one (21) days from the date of the entry of this Order**, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of the Plaintiff's remaining claims and Defendant's attendant defenses, and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f);

(3)     **Within ten (10) days after the meeting**, the parties shall file a joint status report containing:

(a)     the proposed discovery plan;

(b)     the parties' estimate of the time necessary to file pretrial motions;

(c)     the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(d)     the parties' estimate as to the probable length of trial; and

(e)    whether the parties will consent to the jurisdiction of a Magistrate Judge (Smith) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c).  Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court.  L.R. 73.1(c).

Should the parties find that a joint report is not possible, the parties shall each file individual reports which the Court shall entertain for the purposes of setting out its Scheduling Order or other appropriate Order.

This 9th day of August, 2019.

Signed By:

*David L. Bunning*    DB

United States District Judge