**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 18-154-DLB-CJS**

**KIMBERLY CHILDRESS**                                                                                      **PLAINTIFF**

**v.**                                        **MEMORANDUM OPINION AND ORDER**

**BANK OF AMERICA, N.A.**                                                                             **DEFENDANT**

* * * * * * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court on a number of Motions related to Plaintiff's Fair Debt Collections Practices Act case.  First, Plaintiff filed a *Daubert* Motion to preclude Defendant's expert, Robert Shober, from testifying.  (Doc. # 67).  Plaintiff then filed a Motion for Summary Judgment, (Docs. # 68 and 69), and Defendant filed a cross-Motion for Summary Judgment.  (Doc. # 70).  Following the filing of Defendant's Motion for Summary Judgment, Plaintiff filed a Motion to Strike Defendant's Motion.  (Doc. # 72). The Motions have been fully briefed, (Docs. # 74, 77, 79, 81, 83, 84, 85, and 86), and are now ripe for the Court's review.  For the reasons set forth herein, Defendant's Motion for Summary Judgment is **granted** (Doc. # 70), Plaintiff's Motions for Summary Judgment (Doc. # 68 & 69) are **denied**, the other motions referenced above are **denied**, and this case is dismissed in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kimberly Childress filed the instant action in this Court asserting a Fair Debt Collections Practices Act ("FDCPA") claim (Count I), as well as breach of contract

(Count II), negligent misrepresentation (Count III), fraud (Count IV), constructive fraud (Count V), breach of duty of good faith and fair dealing (Count VI), breach of fiduciary duty (Count VII), and punitive damages claims (Count VIII).  (Doc. # 1 ¶¶ 97-189).  However, at the Motion to Dismiss stage, three of these Counts (Count V, VI, and VII) were dismissed entirely, and Count I was dismissed except for Plaintiff's claims under 15 U.S.C. § 1692c(2).  (Doc. # 17).

While the Court previously explained the factual background of this case in detail, following discovery, a new account of the underlying facts is warranted.  This case stems from Childress's mortgage agreement with Security Atlantic Mortgage Company, Inc. for her home located on 812 Dalewood Drive, Villa Hills, Kentucky, 41017, executed in September of 2008.  (Doc. # 1 ¶¶ 6-7).  In July 2008, prior to the first mortgage payment being due, Countrywide Home Loans Servicing began servicing Plaintiff's mortgage.  (Doc. # 70-2 at 31); (*see also* Doc. # 1-6 at 1).  After a year and a half of paying her mortgage in full, Childress began missing or paying only part of her monthly payments.  (Doc. # 1 ¶¶ 8-10).  On September 22, 2011, Security Atlantic Mortgage Company executed an assignment of mortgage transferring the mortgage to Bank of America.  (Doc. # 1-6 at 1-2).

After Childress's loan was transferred to Bank of America, she asked for a modification on her mortgage so that she could more easily make her mortgage payments in full.  (Doc. # 1 ¶ 12).  Bank of America approved Childress for a Workout Assistance Program and requested she fill out a number of documents and provide a cashier's check for $1,095.36, which Childress alleges she mailed on or about June 3, 2010.  (*Id.* ¶¶ 13-16).  Approximately a month later, Childress requested a status update as to her

modification, and Bank of America said it never received her modification documents, although it cashed the cashier's check accompanying the documents.  (*Id.* ¶¶ 18-20).  On July 2, 2010, Childress faxed Bank of America the modification documents, but Childress's mortgage modification was never recorded, as required, with the Kenton County Clerk's Office.  (*Id.* at ¶¶ 21, 24).  Bank of America asserts that Plaintiff never signed the modification agreement, but that it implemented the terms of the 2010 modification as if she had.  (Docs. # 1-5 at 2 and 9-1 at 2).

Under the terms of the 2010 modification, Bank of America capitalized the interest arrearage of $9,622.20 and the delinquent escrow of $1,532.34, resulting in a new principal loan balance of $149,296.39.  (Docs. # 1-5 at 2 and 1-11 at 4).  In layman's terms, capitalizing these amounts simply means adding the unpaid interest and delinquent escrow to the principal balance of the loan.  Ultimately, the modification set a new interest rate of 5.375% with a monthly payment of $1,095.36.  (Doc. # 1-5 at 2-3).

On September 22, 2011, Bank of America recorded an Assignment of Mortgage to acquire Childress's home.  (Doc. # 1 ¶ 37).  While Childress attempted to contact Bank of America's representatives and continued paying her mortgage, Bank of America "called her continuously, sent her repeated delinquent notices, and otherwise harassed her in every fathomable way for years."  (*Id.* ¶¶ 40-42).  While Childress states that she was current on her mortgage payments, (*id.* ¶¶ 27, 38), Bank of America alleges that between July 2010 and April 2012, she missed a number of payments or otherwise did not pay her mortgage in full.  (Doc. # 70-1 at 5).

In April of 2012, at Bank of America's request, Childress completed a trial payment period of three months so that a second modification agreement could be approved.

3

(Docs. # 1 ¶¶ 43-45 and 70-2 at 102, 117).  In the letter approving Childress's second modification in February of 2013, Bank of America informed Childress that there was an error in the 2010 modification documents.  (Docs. # 1 ¶ 46 and 70-2 at 117).  Plaintiff executed the 2013 modification at this time, and rectified the error in the 2010 modification.  (Docs. # 1 at 46-53, 1-10 at 3, and 1-11).  The modification agreement related to the 2010 modification was "not identical" to the agreement presented to Childress in 2010.  (Docs. # 9-1 at 3 and 65-1 at 17); (*see also* Docs. # 1-5 and 1-11).

The 2013 loan modification resulted in a principal loan balance of $157,559.54.  (Doc. # 1-10 at 3).  Ultimately, the 2013 modification set a total monthly payment amount of $1,119.81 with a 4.5% interest rate.  (*Id.*).

During this time, Childress was unaware that two separate 2013 loan modification agreements were recorded with the Kenton County Clerk's Office.  (Docs. # 1 ¶¶ 53-54 and 70-2 at 153-161).  Childress was under the impression that the 2013 modification documents were not for a second modification, but were instead a correction of the 2010 modification documents.  (Docs. # 77 at 5-6 and 65-1 at 17).

While Childress initially assumed that her modification was resolved, on August 7, 2013, she received two identical letters from Bank of America threatening to foreclose on her home as it did not receive her July and August payments.  (*Id.* ¶ 64).  The "missed" payments were automatically withdrawn from her checking account.  (*Id.* ¶ 65).  When Childress asked Bank of America about these letters, she was informed that the payments were applied to "other deferred amounts" on her account of $7,424.19; she alleges management informed her that these amounts should have been zeroed out during the

modification process.  (Docs. # 1 ¶¶ 66-68 and 1-9).[1]  At the end of September 2013, Childress received a letter informing her that her "other deferred amount" actually only totaled $3,422.71.  (Docs. # 1 ¶ 70 and 1-14).

This $3,422.71 amount was ultimately determined to be based on payments Bank of America had advanced to the owner of the loan on behalf of Childress to cover her mortgage during the time it took to process the 2013 loan modification.  (Docs. # 77 at 7 and 70-1 at 7-8).  As explained in Bank of America's February 8, 2013 letter to Childress, during the time necessary to process the 2013 loan modification, Childress had failed to pay her mortgage in full.  (Doc. # 1-9 at 1).  This shortfall, once Bank of America took into account the payments Childress had made, totaled $3,422.71.  (Doc. # 1-14 at 1-2).  Bank of America's September 28, 2013 letter lists the $3,422.71 amount as "other deferred amounts," which are required to be paid at the maturity of the loan.  (*Id.* at 2).

Since 2013, Childress has paid her mortgage while receiving no information regarding the mortgage modifications and being threatened with foreclosure.  (Docs. # 1 ¶¶ 77-81 and 9-1 at 5); (*see also* Doc. # 1-17).  In September 2017, Childress retained counsel, and counsel notified Bank of America of their representation of Childress.  (Doc. # 1 82-83).  Even after retaining counsel, Bank of America contacted Childress about foreclosure or signing another modification.  (*Id.* ¶ 86).

In March of 2018, Childress filed a complaint with the Consumer Financial Protection Bureau, but according to Plaintiff, Bank of America "refus[ed] to truly

---

[1]     Although Plaintiff originally refers to these amounts in her Complaint as "unapplied funds," the letter from Bank of America refers to them as "other deferred amounts" and in later pleadings Plaintiff adopts that language as well.  (*See* Doc. # 69-1 at 8-9).

investigate or attempt[ed] to cover up the serious issues caused by Bank of America." (*Id.* ¶¶ 88-91).

## III.     ANALYSIS

### A.     Plaintiff's Motion to Strike Defendant's Summary Judgment Motion and Affidavit of Ryan Dansby

#### 1.     Standard of Review

Federal Rule of Civil Procedure 26(a)(1)(i) requires parties in their initial disclosure to provide the name of individuals "likely to have discoverable information."  In conjunction with this rule, Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  "'[H]armless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance, by and through Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (table opinion).

#### 2.     Discussion

Plaintiff moves to strike Bank of America's Summary Judgment Motion in its entirety, (Doc. # 71), and to specifically strike the affidavit of Ryan Dansby, Bank of America's corporate representative, (Doc. # 71-2).  (Doc. # 72).  Plaintiff contends that Bank of America did not properly disclose Dansby in its initial or supplemental disclosures, (*id.* at 4), while Bank of America argues that they did disclose Dansby, albeit under the vague term of "corporate representative."  (Doc. # 85 at 2).

Within the Sixth Circuit, it is unlikely that designating a "corporate representative," without naming the representative is sufficient to violate Federal Rule of Civil Procedure

26(a)(1)(I), especially when reading FRCP 26(a)(1)(I) in conjunction with Federal Rule of Civil Procedure 30(b)(6).   FRCP 30(b)(6) specifically contemplates naming "as the deponent a public or private corporation," not a specific individual.   In fact, Bank of America did not identify Davids, the corporate representative designated following Plaintiff's 30(b)(6) notice, in Bank of America's initial or supplemental disclosures—only a "corporate representative on behalf of BANA" was listed.   (Docs. # 72-1 at 1 and 72-3 at 1).  It therefore stands to reason that identifying Bank of America as the deponent does not violate the initial disclosure requirements laid out in FCRP 26.   Therefore, Plaintiff's Motion to Strike (Doc. # 72) is **denied**.

## B.    Summary Judgment Motions

### 1.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact."   *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)).  In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d

7

344, 349 (6th Cir. 1998).

> **2.      Claim under 15 U.S.C. § 1692c(a)(2) of the Fair Debt Collection Practices Act**

Plaintiff argues that she should be granted summary judgment on her claim that Bank of America violated the Fair Debt Collection Practices Act ("FDCPA").  (Doc. # 69-1 at 10).  Childress alleges that Bank of America contacted her sixteen times following notification that Childress was represented by an attorney.  (*Id.* at 11).  Title 15 U.S.C. § 1692c(a)(2) provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ."

In response to this argument, Defendant argues that it is not a debt collector as defined by 15 U.S.C. § 1692a(6).  (Doc. # 70-1 at 18-19).  Section 1692a(6) defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ." It also lays out entities or individuals that the term "debt collector" does not include, such as those "attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt that was not in default at the time it was obtained by such person."  § 1692a(6)(F).

Therefore, whether Bank of America violated the FDCPA turns largely turns on whether Bank of America acquired the debt while it was in default.  *See Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 359 (6th Cir. 2012).  "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired."

*Id.* If Bank of America acquired Plaintiff's mortgage when it was already delinquent, Bank of America would be a debt-collector and subject to the FDCPA. *Id.*

However, Bank of America argues that a narrower exception applies—which allows an entity that assumes a debt obligation through a merger to stand in the shoes of the entity subsumed in the merger, thereby assuming the previous entity's status as either a creditor or a debt-collector. (Doc. # 79 at 3) (citing *Warwick v. Bank of N.Y. Mellon*, No. CV 15-3343, 2016 WL 2997166 (C.D. Cal. May 23, 2016)). Under this theory, because Countrywide Home Loans Servicing began servicing the debt in July of 2008 before Plaintiff was in default, and later merged with Bank of America, Bank of America would not be considered a debt-collector because it steps into the shoes of Countrywide Home Loans Servicing when it first acquired the servicing rights to Plaintiff's mortgage.

Unfortunately for Plaintiff, although the Sixth Circuit has not spoken on this matter, many district courts within the Circuit have found that one who acquires a mortgage through a merger is not considered a debt-collector under the FDCPA. *See Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 588 n.3 (E.D. Mich. 2014) ("if Defendant had obtained the debt via merger after Plaintiffs were in default, it still would not be considered a 'debt collector' under the FDCPA."); *Phillips v. PNC Bank, N.A.*, No. 3:12-cv-207, 2012 WL 6114743, at *4 (S.D. Ohio Dec. 10, 2012) (holding that because PNC acquired Plaintiff's loan through a merger with National City Bank, PNC "stands in National City's shoes as a creditor, not a debt collector subject to the FDCPA."); *McCord v. Resurgent Mortg. Servicing*, No. 3:14-cv-116, 2014 WL 4109622, at *5 (W.D. Ky. Aug. 20, 2014) ("Several courts have thus held that 'when a defendant company acquires a debt through its merger with a previous creditor of the plaintiff rather than via a specific assignment, the debt was

not 'obtained' while it was in default; thus, the defendant company was not a debt collector under the FDCPA.'").

As noted by Plaintiff, Countrywide began servicing Plaintiff's loan in July of 2008 before Plaintiff's mortgage was in default.  (Doc. # 69 at 12 n.1); (*see also* Doc. # 70-2 at 31).  The assignment of mortgage illuminates the relationship between Countrywide and Bank of America by referring to Bank of America as Countrywide's successor by merger.  (Doc. # 1-6 at 1).  As Countrywide assumed the servicing of Plaintiff's mortgage before the loan was in default, Bank of America as the successor in interest obtains Countrywide's status as a creditor instead of a debt collector.  Because creditors are not subject to the FDCPA, Bank of America did not violate the FDCPA.  *See Ogle v. BAC Home Loans Servicing LP*, 924 F.Supp.2d 902, 910 (S.D. Ohio 2013) ("An entity that "services" the loan is treated as a "creditor" and is generally not subject to the FDCPA, when the debt was not in default at the time it was assigned.").  Therefore, Bank of America's Motion for Summary Judgment as it relates to Plaintiff's FDCPA claim is **granted**, and Plaintiff's Motion for Summary Judgment on her FDCPA claim is **denied**.

### 3.    *Breach of Contract Claim*

Plaintiff next alleges that Bank of America breached the mortgage documents by: (1) failing to apply Childress's loan payments appropriately, (2) the addition of certain "other deferred amounts" to the mortgage's principal balance, and (3) failure to service Childress's loan in an expedient and transparent manner.  (Doc. # 69-1 at 17-24).  Defendant alternatively argues that there is no evidence supporting Plaintiff's theory that Bank of America breached the mortgage or modification documents.  (Doc. # 70-1 at 22-25).  In order to make out a breach of contract action, three elements must be met: (1)

existence of a contract, (2) breach of that contract, and (3) damages resulting from the breach of contract. *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F.Supp.3d 877, 886 (E.D. Ky. 2014); *see also Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).

The initial contract[2] at issue is Childress's mortgage agreement with Security Atlantic Mortgage Company.  (Docs. # 1-2 and 1-3).  In relevant part, the mortgage requires that payments by Plaintiff should be applied in the following order: (1) mortgage-insurance premium, (2) taxes and special assessments, (3) interest, (4) amortization of principal, and (5) late charges.  (Doc. # 1-3 at 4).  "A mortgage is a contract between the borrower and lender subject to the rules of interpretation applicable to contracts."  *In re Dickson*, 655 F.3d 585, 590 (6th Cir. 2011) (quoting *Turner v. EMC Mortg. Corp.*, No. 2003-CA-002522, 2005 WL 1540158, at *1 (Ky. Ct. App. July 1, 2005)).  Common sense construction of contracts requires that this Court read the contract as a whole, and if the language is unambiguous, the contract will be enforced in accordance with its express

---

[2]     The loan modifications could also be viewed as contracts in this case.  However, those documents only concern the new principal balance, payments, and effective dates and therefore are less illuminating.  Further, there is disagreement as to which modification governs—the 2010 modification or the 2013 modification.  (Docs. # 69-1 at 15-17 and 79 at 9).  While the 2010 modification was first in time, it was not recorded with the Kenton County Clerk until *after* the 2013 modification was recorded.  (Docs. # 1-10 and 1-11).  Therefore, Plaintiff argues that under the doctrine of novation the 2010 modification actually terminates the 2013 modification and governs Bank of America's conduct.  (Doc. # 69-1 at 15).  Alternatively, Bank of America argues that the 2013 modification controls because of the effective dates of each modification, regardless of when they were signed—the 2010 modification has an effective date of June 2, 2010 while the 2013 modification has an effective date of July 1, 2012.  (Docs. # 79 at 9, 1-11 at 4, and 1-10 at 3). This argument seems to only relate to what Childress's principal balance is on her home mortgage.  (*See* Doc. # 69-1 at 17 n.2).  If Plaintiff is attempting to argue that Childress's mortgage's principal balance is smaller than it is, thereby eliminating part of her loan obligation, this argument is not well-taken.  Ultimately, Plaintiff has failed to illuminate the relevance of which modification governed outside of the issue relating to Plaintiff's principal balance and payments. Therefore, the Court need not address this argument further.

terms.  *Id.*  However, if a contract is missing terms necessary to guide the parties' conduct, then the Court may use extrinsic evidence to interpret the contract.  *Nutrien Ag Sols., Inc. v. Duvall*, No. 1:18-cv-123-DJH, 2021 WL 399910, at *2 (W.D. Ky. Jan. 4, 2021) (citing *Vanhook Enters., Inc. v. Kay & Kay Contracting*, 543 S.W.3d 569, 572 (Ky. 2018)).  If a court determines that a contract is ambiguous, it "will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties, and the conditions under which the contract was written[.]"  *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (quoting *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (1954)).  However, if the contract is unambiguous, "a written agreement will be enforced strictly according to its terms."  *Id.* (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (1966)).

It is true, as Childress argues, that Bank of America failed to comply with its own internal policies when servicing Plaintiff's account.[3]  But as discussed in further detail below, Bank of America still applied Childress's loan payments in the order proscribed in

---

[3]     Bank of America has moved to have these loan payment processing procedures it marked as "confidential" in the course of discovery—what it refers to as internal policies—filed in the court record under seal in conjunction with the Plaintiff's dispositive motion briefing. (*See* Doc. # 56). Specifically, in the course of responding to Plaintiff's discovery requests, Defendant produced its internal Payment Posting Program Procedure, Bates numbered CONFIDENTIAL BANA 002130-002199, and Late Charge Program Procedure, Bates numbered CONFIDENTIAL BANA 002200-002223.  Defendant indicated in its Motion to Seal that it did not intend to refer to any of these materials in the course of its dispositive briefings.  However, because Plaintiff indicated that she may use these materials as part of her dispositive or other pretrial filings, Bank of America sought to have these Program Procedures filed in the record under seal.  The Court allowed for provisional sealing of these two Program Procedures (*see* Doc. # 57, Page ID 418-487 (Payment Posting Program Procedure, Bates 002130-002199) and Page ID 488-511 (Late Charge Program Procedure, Bates 002200-002223)) while the parties further briefed the Motion to Seal and made their dispositive motion filings. (See Doc. # 61).  Plaintiff did not file a response to the Motion to Seal.  The parties moved forward with their dispositive filings. As indicated, Defendant did not reference either of the Program Procedures in its dispositive-related filings. Plaintiff did, but referred only to the Payment Posting Program Procedure, Bates 002130-002199. (Doc. # 57 at Page ID 418-487).

the mortgage contract—first to the mortgage-insurance premium, second to any taxes and special assessments, third to interest, fourth to amortization of principal, and fifth to late charges.[4]   (Docs. # 1-3 at 4).   It seems Plaintiff's true contention is that Bank of America violated its duties under its contract by not applying partial payments properly once the amount was sufficient to cover a full contractual payment, failing to timely apply payments, and the use of other accounts where her payments were temporarily placed. (Doc. # 68-1 at 18-19).    Therefore, Plaintiff's first and third argument, relating to application of payments and expediency of said application will be discussed first.  While Plaintiff argues that these actions amount to breach of contract, the Court finds that they do not.

First, Plaintiff argues that Bank of America breached the mortgage agreement by failing to apply certain amounts to her principal, and instead placing these amounts into an "unapplied funds" suspense account, even when the total in the unapplied funds account was enough to cover an entire monthly mortgage payment.  (Doc. # 69-1 at 19). Bank of America instead argues that even if payments were temporarily placed in the "unapplied funds" account, all payments were eventually applied in accordance with the mortgage documents to Plaintiff's principal balance.  (Doc. # 79 at 14).  Plaintiff attempts to rely upon Bank of America's internal policies to show that the payments were not applied in accordance with Bank of America's typical standards.  (Doc. # 68-1 at 18-19).[5]

---

[4]      It appears Plaintiff does not argue that the payments were applied in the correct order, but instead argues that the payments were not applied in accordance with Bank of America's policies and procedures which is discussed in further detail below.  (Docs. # 68-1 at 18-19).

[5]      Upon consideration of Defendant's Motion to Seal (Doc. # 56), the specific documents Defendant seeks to seal, and the dispositive filings generally, Defendant's request to seal the Program Procedures (internal policies) now that they have been filed in the public record for adjudication purposes will be granted.  As Defendant recognizes, there is "a 'strong presumption

Plaintiff further argues that because the mortgage documents are silent on the procedures used by Bank of America when dealing with a customer's account, the Court should consider the policies as extrinsic evidence necessary to interpreting the mortgage contract.  (*See generally id.* at 17-21).

It is abundantly clear that Bank of America's internal policies directly contradict how it treated Plaintiff's account.  The policy explains that when a "customer is delinquent and the amount received is less than the full contractual payment (FCP)[,] [t]hese payments are held in a partial account until a determination can be made whether to apply or return the funds or until enough funds have been received to make a Full Contractual Payment."  (Doc. # 57 at 10).  The policy further outlines the time period in which customer payments should be posted or returned—"mortgage payments must be applied promptly and timely to ensure there is no negative impact to the customer such as late charges, increased interest, fees or derogatory credit reporting."  (*Id.* at 6).  The policy also contemplates that a customer should be informed of the existence of the partial account and any activity that occurs in the account.  (*Id.* at 48).  However, the mortgage documents

---

in favor of openness' as to court records."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.,* 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1179 (6th Cir. 1983)).  Defendant argues these Procedures are internally developed trade secrets under Kentucky law that allow Defendant to effectively and efficiently operate in the competitive lending marketplace while complying with statutes and regulations; that these Procedures are not made publicly available and could be accessible by Defendant's competitors if openly available in this case record; that the portion of materials sealed has been narrowly tailored by limiting it to these Procedures only while none of the documents specific to Plaintiff's loan and processing have been sealed; and that the general public has minimal interest in these Procedures specifically.  *Id.*  The Court agrees with Defendant's assessment, which has not been countered by Plaintiff, and further points out that the substance of the Program Procedures cited and argued by Plaintiff were not relied upon by this Court in adjudicating the dispositive motions.  *See Brown & Williamson,* 710 F.2d at 1180-81 ("The public has a strong interest in obtaining the information contained in the court record," including "what evidence and records the District Court . . . relied upon" in reaching its decision.)  For all of these reasons, the Court finds that the Procedures currently provisionally filed under seal (Doc. # 57) shall remain sealed.

are not sufficiently ambiguous for the Court to incorporate the policies into the contract between Plaintiff and Bank of America.  While the internal policies of Bank of America are undoubtedly contradictory to its actions, "[c]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract."  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Oh. Ct. App. 2003); *see also Ky. Emps.' Mut. Ins. v. Decker*, No. 2010-SC-459, 2011 WL 1642183, at *6 (Ky. Apr. 21, 2011).  The mortgage documents clearly require full payment each month.[6]  For this reason alone, the Court refuses to read into the contract an ambiguity that only arises after reading external evidence of Bank of America's policies.[7]

---

[6]     The Note makes clear that "[i]f Borrower defaults by failing to *pay in full* any monthly payment, then Lender may . . . require immediate payment in full of the principal balance remaining due and all accrued interest."  (Doc. # 1-2 at 2) (emphasis added).  Likewise, the mortgage includes a similar acceleration of debt provision which is triggered following Borrower's failure to "*pay in full* any monthly payment . . . prior to or on the due date of the next monthly payment."  (Doc. # 1-3 at 5) (emphasis added).

[7]     Plaintiff cited to the Payment Posting Program Procedures in her Motion for Summary Judgment (Docs. # 68 & 69) and her Response to Defendant's Motion for Summary Judgment (Docs. # 76 & 77).  Plaintiff did not attach the actual Program Procedures to any of these filings, instead citing to docket entry 57 as ordered (*see* Doc. # 61).  The Court's Order instructed Plaintiff, to the extent her filing "discusses or quotes [Bank of America's] policies and procedures in substance and at length," to file the document under seal and file a copy not under seal but with the quotes and/or discussion redacted. (Doc. # 61 at 2).  Review shows Plaintiff makes only passing reference to the Procedures, rather than an in-depth discussion or analysis, and Plaintiff's quoting of certain language of the Procedures is brief rather than at length.  While Plaintiff likely made sealed filings (Docs. # 68 and 76) and unsealed but redacted filings (Docs. # 69 and 77) out of an abundance of caution, the Court sees no need for these textual references to be redacted and the unredacted versions to remain under seal.  Also, in her Motion to Strike Defendant's Motion for Summary Judgment (Docs. # 71 and 72), Plaintiff attached a redacted version of Defendant's Responses to Plaintiff's Third Request for Production of Documents (Doc. # 72-5) and a sealed version of the Motion and attachments with the Responses not redacted (Doc. # 71-5).  It is not clear why Plaintiff did so, and the Court sees no basis to have this attachment of unredacted Responses sealed from public access.

Also for purposes of dispositive motion briefing, Plaintiff filed the deposition transcripts of Rule 30(b)(6) representative Mary Davids (Doc. # 63), Defendant's expert Robert Shober (Doc. # 64), Plaintiff (Doc. # 65), and Plaintiff's expert Donald Benzinger (Doc. # 66).  The Payment

Second, Plaintiff argues that Bank of America improperly added "Other Deferred Amounts" to Plaintiff's principal balance without her consent. (Doc. # 68-1 at 22-23). As explained above, the "Other Deferred Amounts" owed consisted of payments Bank of America had advanced to the owner of the loan on behalf of Childress to cover her mortgage during the time it took to process the 2013 loan modification. (Docs. # 77 at 7 and 70-1 at 7-8). As explained in Bank of America's February 8, 2013 letter to Childress, during the time necessary to process the 2013 loan modification, Childress had failed to pay her mortgage in full, resulting in a shortfall of $7,424.19. (Doc. # 1-9 at 1). It was later determined that the actual shortfall was only $3,422.71. (Doc. # 1-14 at 1-2). However, by the time Bank of America's mistake was uncovered, Bank of America had advanced the investor of the loan the full $7,424.19, meaning Bank of America incorrectly over-advanced to the investor $4,001.48. (Docs. # 77 at 7 and 70-1 at 7-8). In an attempt to correct this mistake, Bank of America reduced Childress's "Other Deferred Amounts," which would be due at the maturity of the loan, to $3,442.71, and added $4,001.48 to Childress's principal balance, resulting in a new principal balance of $147,521.56 on August 25, 2015. (Docs. # 66-1 at 28 and 63-2 at 373).

---

Posting Program Procedures were attached as an exhibit to the deposition transcripts of Mary Davids, Robert Shober, and Donald Benzinger. However, these Payment Posting Program Procedures were just one of many exhibits to these depositions. Rather than separate out and file separately under seal only the Payment Posting Program Procedures, Plaintiff filed all exhibits to these depositions under seal, consisting of hundreds of pages. Plaintiff did not offer a motion to seal these other documents. In addition, Plaintiff also filed the entire transcript of Benzinger's deposition under seal. Again, no motion to seal explaining why this entire transcript should be sealed is offered. Moreover, the portion of his testimony referring to the Payment Posting Program Procedures (*see* Doc. # 66-1, pps. 138 to 142), is general in nature and does not refer to the Program Procedures in substance and at length. There is no need for this testimony to be sealed.

16

While Childress argues that Bank of America unilaterally modified the 2013 modification by adding $4,001.48 to her principal, (Doc. # 68-1 at 22), Bank of America argues that it simply corrected an over-advancement which had previously decreased Childress's principal without her paying for such decrease.  (Doc. # 79 at 17).  The 2013 modification is silent on additions to principal, but it is not silent on Plaintiff's responsibility to make payments.  (Doc. # 1-10).

In reality, the only reason Bank of America needed to advance funds to the investor is because Childress failed to pay the entirety of her mortgage payment while the 2013 modification was pending.  By originally advancing $7,424.19 to the investor, Bank of America inadvertently decreased Childress's principal loan amount by $4,001.48. Because of Bank of America's mistake, there was a period of time where interest was not being assessed on the full principal balance of Plaintiff's mortgage, in turn saving Plaintiff money.  As there can be no breach of contract claim if there are no resulting damages, this argument likewise fails.  *Journey Acquisition-II, L.P.*, 39 F.Supp.3d at 886.

Ultimately, while the Court does not condone this repeated failure of Bank of America at the expense of Childress, its actions did not constitute a breach of contract.

### 4.   *Negligent Misrepresentation and Fraud Claims*

Plaintiff alleges that Bank of America misrepresented the process and implementation of both the 2010 and 2013 modifications and further misrepresented to Childress that she was executing the 2010 modification when she was actually executed an entirely new modification.  (Doc. # 69-1 at 26, 28).  As to the fraud claim, Plaintiff alleges that Bank of America fraudulently applied the miscalculated "other deferred amounts" to her mortgage principal.  (*Id.* at 30).

The tort of negligent misrepresentation was first recognized in Kentucky in *Presnell Construction Managers, Inc. v. EH Construction, LLC*.  134 S.W.3d 575, 580 (Ky. 2004). The Kentucky Supreme Court adopted the Restatement (Second) of Torts § 552, which sets out the basic elements of negligent misrepresentation:

> One who, in the course of his business . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Similarly, fraud requires that Plaintiff show: (1) "a material misrepresentation," (2) "which is false," (3) "known to be false or made recklessly," (4) "made with inducement to be acted upon," (5) "acted in reliance upon," and (6) "causing injury."  *Joiner v. Tran & P Props., LLC*, 526 S.W.3d 94, 103 (Ky. Ct. App. 2017) (quoting *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. 1978)).  Therefore, each claim turns on a similar essential piece: a misrepresentation that is known to be false by a defendant which induces justifiable reliance by a plaintiff.

While Plaintiff alleges that Bank of America supplied false information, namely that Childress was told she was re-executing the 2010 modification, when she was actually executing the 2013 modification, no reasonable jury could come to that conclusion given the evidence in the record.  Bank of America's letter accompanying the 2013 modification explained that this was a "*new* Modification Agreement," which included a new monthly payment amount of $1,119.81.  (Doc. # 1-9 at 1) (emphasis added).  The attached Modification Agreement further clarified that there was a *new* Maturity Date and a *new* Principal Balance, which resulted in the calculated monthly payment amount.  (Doc. # 1-10 at 3).  Further, the 2013 modification clearly states: "[t]his Agreement supersedes the terms of any modification, forbearance, trial modification payment plan, or loan workout

plan that I previously entered into with Lender." (*Id.* at 4).   The 2010 modification, although executed after the 2013 modification, does not include similar language.   (Doc. # 1-11).

The terms of the agreement clearly indicate that the 2013 modification controls and that it was new and separate from the 2010 modification.   Kentucky law provides that "parties may not base a fraud in the inducement claim on their reliance on oral representations contrary to the terms of written agreements . . ." *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 752 (E.D. Ky. 2010) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003)).   The written 2013 modification clearly contemplates that the transaction was a new modification, with a new principal balance, and new payment terms.   Plaintiff cannot use alleged oral misrepresentations by Defendant as the basis for a claim where the written terms of the agreement directly contradict these alleged oral representations. *See Helton v. Am. Gen. Life Ins. Co.*, No. 4:09-CV-118, 2010 WL 2889666, at *2-3 (W.D. Ky. July 21, 2010).

As for Plaintiff's allegation of fraud relating to Bank of America addition of "other deferred amounts" to Plaintiff's principal, this claim fails for the same reasons discussed above, *supra* III. A. 3.   Like a breach of contract claim, a fraud claim cannot survive if there is no resulting injury. *Joiner*, 526 S.W.3d at 103.

Even if Plaintiff did not fail to meet the requirements of either a fraud or negligent misrepresentation claim, the claims would likely be barred by the statute of limitations.   In Kentucky, the statute of limitations for claims of fraud or negligent misrepresentation is five years.   Ky. Rev. Stat. § 413.120(11); *see also Wagner v. Drees Co.*, 422 S.W.3d 281, 282 n.1 (Ky. Ct. App. 2013).   Childress filed her Complaint on August 28, 2018.   (Doc. #

1).  The 2013 modification was signed by Childress on February 26, 2013, and by a Bank of America representative on March 15, 2013.  (Doc. # 1-10 at 7-8).  The 2010 modification was re-executed by Childress on March 15, 2013, and by a Bank of America representative on May 16, 2013.  (Doc. # 1-11 at 5, 7).  The claims regarding the modifications are thus too late under the five year statute of limitations unless an exception applies.

While Plaintiff argues that under federal law the statute of limitations begins to run when the fraud should have been discovered, even so, the alleged fraud or negligent misrepresentation could have been discovered by simply reading the mortgage documents.  (Doc. # 77 at 20).[8]  Under Kentucky law, the applicable statute of limitations begins to run "when by the exercise of ordinary care, the fraud ought to be discovered." *Shelton v. Clifton*, 746 S.W.2d 414, 415 (Ky. Ct. App. 1988).  This so-called ordinary care, or exercise of reasonable diligence, dooms Childress's claim.  If Childress had read the modification documents, she would have been put on alert that the 2013 modification controls, and any alleged statement by Bank of America to the contrary was untrue.  For these reasons, Plaintiff's negligent misrepresentation and fraud claims fail.

### C.    Plaintiff's *Daubert* Motion

#### 1.    *Standard of Review*

Whether an expert's testimony is admissible is governed by Rule 702 of the Federal Rules of Evidence.  Expert witnesses possess "knowledge, skill, experience,

---

[8]    While Plaintiff cites *Freeman v. Laventhol & Horwath*, for this proposition, that case is only applicable when there is a federal claim at issue.  34 F.3d 333, 341 (6th Cir. 1994) ("Although federal courts look to state law to determine the length of the statute of limitations, it must apply federal law to determine the date on which a statute of limitations in a *federal securities case* began to run.").  Because both fraud and negligent misrepresentation are state law claims, Kentucky law controls, but it does use a similar doctrine.

training, or education" that allow them to "testify in the form of an opinion or otherwise if" four conditions are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) the testimony is the product of reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Broadly speaking, expert testimony is admissible if the expert is qualified, the testimony is reliable, and "the evidence [is] relevant and helpful to the trier of fact[.]"  *Scott v. Deerbrook Ins. Co.*, 714 F. Supp. 2d 670, 673 (E.D. Ky. 2010).

While Rule 702 establishes a general framework for assessing the reliability of expert testimony, the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* clarified that a court's focus "must be solely on [the expert's] principles and methodology, not on the conclusions that they generate."  509 U.S. 579, 595 (1993).  *Daubert* requires this Court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589; *see also Kumho Tire Co., Ltd., et al. v. Carmichael, etc., et al.*, 526 U.S. 137, 141 (1999) (extending this reasoning to all expert testimony).  "It is the proponent of the testimony that must establish its admissibility by a preponderance of proof."  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

## 2.    *Expert Robert Shober and Plaintiff's Daubert Motion*

Robert Shober's expert report contains two specific opinions: (1) that Bank of America "acted in a manner consistent with industry practices in addressing the matter and coming to a satisfactory resolution" and (2) Bank of America did not commit any act of fraud against Plaintiff.  (Doc. # 74-2 at 6, 8).  In support of these opinions, Robert

Shober's expert report uses amortization schedules to determine whether Plaintiff's payments towards her mortgage were applied appropriately under the loan documents.

Due to the dismissal of Plaintiff's remaining causes of action, it is unnecessary for the Court to consider her Daubert Motion (Doc. # 67) as it is now moot.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)   Defendant's Motion to Seal (Doc. # 56) is **GRANTED**, and the Program Procedures provisionally filed under seal (Doc. # 57) **shall remain sealed**;

(2)   All exhibits attached to the deposition of Mary Davids (Doc. # 63-2) **shall be unsealed** with the exception of Exhibit U (Doc. # 63-2, Page ID 1681-1750), which **shall remain sealed**;

(3)   All exhibits attached to the deposition of Robert Shober (Doc. # 64-2) **shall be unsealed** with the exception of Exhibit 12 (Doc. # 64-2, Page ID 2039-2108), which **shall remain sealed**;

(4)   The deposition transcript of Donald Benzinger (Docs. # 66 and 66-1) **shall be unsealed,** and all exhibits attached to said deposition (Doc. # 66-2) **shall be unsealed** with the exception of Exhibit 1 (Doc. # 66-2, Page ID 3182-3251), which **shall remain sealed**;

(5)   Plaintiff's unredacted Motion for Summary Judgment filed under seal (Docs. # 68 and 68-1), Motion to Strike filed under seal (Doc. # 71 and attached exhibits), including unredacted Exhibit E (Doc. # 71-5), and unredacted Response in Opposition to Defendant's Motion for Summary Judgment filed under seal (Doc. # 76) **shall be unsealed**;

(6)     Defendant's Motion for Summary Judgment (Doc. # 70) is **GRANTED**;

(7)     Plaintiff's Motion for Summary Judgment (Doc. # 68 and 69) is **DENIED**;

(8)     Plaintiff's Motion to Strike (Docs. # 71 and 72) is **DENIED**;

(9)     Plaintiff's *Daubert* Motion (Doc. # 67) is **DENIED as moot**;

(10)    Plaintiff's Complaint (Doc. # 1) is **dismissed with prejudice**; and

(11)    Judgment in favor of Defendant shall be filed contemporaneously herewith.

This 19th day of January, 2022.



Signed By:

*David L. Bunning*

**United States District Judge**

O:\DATA\ORDERS\Cov2018\18-154 MOO_Final.docx

23